[Cite as *State v. Swarthout*, 2011-Ohio-5008.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | | |

| STATE OF OHIO | | C.A. No. 10CA0107-M |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| SEAN M. SWARTHOUT | | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | | CASE No. 10CR0231 |

DECISION AND JOURNAL ENTRY

Dated: September 30, 2011

WHITMORE, Judge.

{¶1} Defendant-Appellant, Sean Swarthout, appeals from his conviction in the judgment of the Medina County Court of Common Pleas. This Court affirms.

I

{¶2} At approximately 1:00 a.m., Brendan McDonald and Rachel Cihlar walked to their cars together, having just attended the late movie showing at the Regal Cinema. The two were home on break from their respective colleges and had not seen each other for some time, so they stood outside their cars talking in the parking lot. On that evening, McDonald drove a BMW and Cihlar drove a Chevy Cobalt to the theater. Because their cars were positioned next to each other, but facing opposite directions, McDonald and Cihlar stood in between the cars while they spoke. After a short while, they both saw a silver car emerge from the back of the theater at a high rate of speed and abruptly stop in a side parking lot.

{¶3}    Swarthout, the driver of the silver car, and his passenger, Lucas Carter, exited the car briefly before reentering it.  Swarthout then sped over to McDonald and Cihlar and slammed on the brakes as he pulled close to where they were standing.  Swarthout rolled down his window and accused McDonald of "mean mugging" him from across the parking lot.   McDonald understood Swarthout to be asking why he had been staring at Swarthout and Carter, so McDonald denied doing so.   Both Swarthout and Carter then exited their car, and Carter removed a baseball bat from the backseat.  As they approached, Carter used the baseball bat to strike Cihlar's car.  Meanwhile, McDonald removed his smartphone from his pocket and began to dial 911.

{¶4}    Swarthout ripped McDonald's phone from his hand and informed him that he was "not calling anybody."   Believing that Swarthout and Carter meant to rob him, McDonald offered Swarthout his wallet, and Swarthout accepted it.  Swarthout asked if there was money in the wallet and looked through it.  After finding only two dollars in cash, Swarthout dropped the wallet and money on the ground.   Swarthout "flip[ped] through" and "play[ed] with" McDonald's smartphone while Carter approached McDonald.   Carter placed his fist on McDonald's chin and knocked his head back several times.  Swarthout continued to "look[] through" McDonald's phone during the encounter.  He then lofted the phone into the air, causing McDonald to look up.  Carter took advantage of McDonald's distraction and punched him in the face. McDonald fell against the BMW before falling to the ground.  Swarthout and Carter fled, entered their car, and sped off.  McDonald retrieved his phone and soon used it to call the police, giving them a description of Swarthout, Carter, and the silver car.

{¶5}    The police received a phone call from another complainant in the area not long after McDonald called them.  Specifically, a man named Thomas Archer called to notify them

that Swarthout had repeatedly hit him and had kicked his truck before driving away in a Dodge Neon. Swarthout and Carter, an acquaintance of Archer's, found Archer sitting in his vehicle in a parking lot nearby the movie theater. Archer indicated that Swarthout threatened him with a baseball bat and claimed to have a handgun in his car while he tried to get Archer to engage in a fight with him. Based on the descriptions that McDonald and Archer gave, the police were able to apprehend Swarthout and Carter in the parking lot of a gas station in the same area. The police found a baseball bat in the back of their car.

{¶6} On May 20, 2010, a grand jury indicted Swarthout on two counts of robbery, in violation of R.C. 2911.02(A)(2) and R.C. 2911.02(A)(3), respectively. A bench trial took place on August 10, 2010. The trial court granted Swarthout's motion for acquittal on the count arising from R.C. 2911.02(A)(2), but denied the motion on the remaining count. Subsequently, the trial court found Swarthout guilty of robbery and sentenced him to jail and community control.

{¶7} Swarthout now appeals from his conviction and raises one assignment of error for our review.

II

Assignment of Error

"THE TRIAL COURT ERRED IN CONVICTING APPELLANT OF THIRD DEGREE FELONY BURGLARY AS SUCH FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶8} In his sole assignment of error, Swarthout argues that his conviction is against the manifest weight of the evidence. We disagree.

{¶9} In determining whether a conviction is against the manifest weight of the evidence an appellate court:

"[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340.

A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin* (1983), 20 Ohio App.3d 172, 175; see, also, *Otten*, 33 Ohio App.3d at 340.

{¶10} R.C. 2911.02(A)(3) provides that "[n]o person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall *** [u]se or threaten the immediate use of force against another." The phrase "theft offense" refers to any violation of the enumerated statutes set forth in R.C. 2913.01(K), including inchoate violations arising by way of attempt or complicity. R.C. 2913.01(K)(1)-(4). Two designated theft offenses are the crimes of theft itself, pursuant to R.C. 2913.02, and the unauthorized use of property, pursuant to R.C. 2913.04. R.C. 2913.01(K)(1). The theft statute prohibits any person, whose purpose is to deprive an owner of his property, from knowingly obtaining or exerting control over the property by threat or intimidation. R.C. 2913.02(A)(4)-(5). The unauthorized use statute prohibits a person from knowingly using or operating another's property without their consent or, in the instance of a telecommunications device, "knowingly gain[ing] access to, attempt[ing] to gain

access to, or caus[ing] access to be gained to" the device without the owner's consent. R.C. 2913.04(A)-(B).

{¶11} Initially, we note that Swarthout's assignment of error and the law set forth in the body of his brief pertain solely to the weight of the evidence, not its sufficiency. Swarthout argues that his conviction is against the weight of the evidence because Carter was the only one who used or threatened to use force against McDonald; he did not take any of McDonald's property from the scene; and, while he held McDonald's smartphone, he never used or operated it.

{¶12} McDonald testified that it was Carter who manipulated a baseball bat during the encounter in the parking lot, used the bat to hit Cihlar's car, and ultimately struck McDonald in the face. It was Swarthout, however, who sped over to McDonald and Cihlar, slammed the brakes on the car he was driving, and first engaged McDonald by accusing him of staring. Swarthout also ripped McDonald's phone from his hand when he attempted to call the police and told him that he was "not calling anybody." He then later threw the phone into the air, giving Carter the opportunity to punch McDonald in the face.

{¶13} Even if Swarthout did not directly use or threaten the immediate use of force against McDonald or Cihlar, the State specifically argued at trial that Swarthout aided and abetted Carter in his use of force. See *State v. Harrison*, 9th Dist. Nos. 24031 & 24034, 2008-Ohio-6612, at ¶9. The record supports that theory, and Swarthout did not address aiding and abetting in his appellate brief. Absent any argument to the contrary from Swarthout, we conclude that the trial court did not lose its way by holding Swarthout equally responsible for the force used against McDonald. See *State v. Herring* (2002), 94 Ohio St.3d 246, 251 ("[A] defendant charged with an offense may be convicted of that offense upon proof that he was

complicit in its commission, even though the indictment is 'stated *** in terms of the principal offense' and does not mention complicity.").

{¶14} Swarthout's two remaining arguments both relate to his commission or attempted commission of a theft offense. To convict Swarthout, the trier of fact need only have believed that he used or operated McDonald's smartphone without his consent. See R.C. 2913.01(K)(1) (defining "theft offense" to include the unauthorized use of property); R.C. 2913.04(A) (defining the unauthorized use of property). Swarthout argues that he only looked at the phone. According to Swarthout, McDonald acknowledged that the phone was broken, so merely holding it did not constitute use or operation.

{¶15} McDonald testified that his smartphone was a Blackberry and sometimes locked up or froze, much like a computer, until he took the battery out and then put the phone back together. The phone was capable of use, however, because McDonald used it to call the police. Moreover, McDonald testified that Swarthout was "flip[ping] through" and "playing with" his phone. McDonald did not specify the length of time that Swarthout had his phone, but did testify that Swarthout "flip[ped] through" and "play[ed] with" the phone from the time he took it until the time he threw it into the air. After Swarthout took the phone, enough time passed for Swarthout and McDonald to trade several remarks about the ownership of the BMW and for Carter to walk over to McDonald and knock back McDonald's head several times using his fist. Accordingly, either the phone was not working and Swarthout was attempting to use it to no avail during that entire time period, or the phone was working, he was using it in some fashion, and it later locked up when he threw it and it crashed to the ground. Given that Swarthout held the phone for some time and McDonald testified that he was "flip[ping] through" it and "playing with" it throughout that time period, it was within the trial court's province to believe the latter.

{¶16} Moreover, a robbery only requires an attempt to commit a theft offense. R.C. 2911.02(A). The record supports the conclusion that Swarthout was not merely holding the phone; he was trying to use it. Any failure in his being able to actually use it was attributable to the improper functioning of the phone, not Swarthout's lack of trying. See R.C. 2923.02(B) (providing that one cannot defend against a charge of attempt on the basis of factual impossibility). Accordingly, the trial court did not lose its way in concluding that Swarthout attempted or committed a theft offense. See R.C. 2911.02(A).

{¶17} Based on our review of the record, Swarthout's conviction is not against the manifest weight of the evidence. His sole assignment of error is overruled.

### III

{¶18} Swarthout's sole assignment of error is overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETH WHITMORE
FOR THE COURT

MOORE, J.
CONCURS

CARR, P. J.
CONCURS, SAYING:

{¶19} While I concur in the majority's judgment because the evidence meets the technical elements of an unauthorized use of property, and therefore robbery, I do not believe that this is how the legislature intended for the statute to be applied. I concur, however, because this is a matter for the legislature, and not this Court, to address. Although the conduct here as alleged was clearly outrageous, there were numerous other criminal charges which appear to have been supported by the facts.

APPEARANCES:

KENNETH C. STAIDUHAR, Attorney at Law, for Appellant.

DEAN HOLMAN, Prosecuting Attorney, and MATTHEW KERN, Assistant Prosecuting Attorney, for Appellee.